IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| SHUNA R. FLOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:05cv329-C |
| | ) (WO) |
| JO ANNE B. BARNHART | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Shuna R. Floyd ("Floyd"), applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. Clark then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). The parties have consented to entry of final

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

judgment by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[2] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1)  Is the person presently unemployed?
> (2)  Is the person's impairment severe?
> (3)  Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4)  Is the person unable to perform his or her former occupation?
> (5)  Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

[3] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. Administrative Proceedings

Floyd was 32 years old at the time of the hearing before the ALJ. (R. 294.) She is a highschool graduate and has an Associate Degree in Computer Science. (*Id.*) Floyd's prior work experience includes working as an administrative assistant, receiving clerk, and kitchen helper. (R. 304.) Following the hearing, the ALJ concluded that Floyd has severe impairments of cephalgia (migraine and tension headaches), numbness in bilateral upper

---

as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

extremities, gastroesophageal reflux disease, anxiety, and depression. (R. 24.)  The ALJ concluded that Floyd was able to perform past relevant work. (R. 27.)  Accordingly, the ALJ found that Clark was not disabled. *Id*.

## IV.  Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work.  *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990).  In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, *e.g.*, the testimony of the claimant and his family or friends, and (4) the claimant's age, education, and work history.  *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983).

The sole issue, as asserted by Floyd, is whether the Commissioner failed to properly apply the "treating physician rule" to the facts of this case. (Doc. No. 11 at 1.)  Specifically, Floyd contends that the ALJ failed to accord the appropriate weight to a report from her treating physician, Dr. Kahing Chan, regarding her inability to work while suffering from migraine headaches.  Floyd further argues that testimony from a medical expert and vocational expert concerning Dr. Chan's report substantiates her claim that her headaches preclude her from returning to her past relevant work.

The law is well-settled; the opinion of a claimant's treating physician must be accorded substantial weight unless good cause exists for not doing so.  *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985).

However, the weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

Although Floyd argues that the ALJ failed to accord the appropriate weight to Dr. Chan's findings in the headache questionnaire, it is clear that the ALJ did not discredit Dr. Chan's medical opinion. The ALJ specifically found that "Dr. Chan's assessment on a Headaches Questionnaire dated April 12, 2004, reported that the frequency of headaches was 2 to 3 times a week and he stated that the claimant sometimes had symptoms of nausea, malaise, photosensitivity and visual disturbances; however, he noted in the questionnaire and in his treatment notes that Cafergot helped her migraine headaches and she had no side effects from the medications."[4] (R. 25.) The ALJ also noted that "in [Dr. Chan's] evaluation and on the questionnaire, that despite the claimant's headaches, she was capable of work activity" and that Dr. Chan did not recommend any additional testing.[5] (*Id*.) The ALJ concluded that, based on Dr. Chan's evaluation of Floyd and his responses to the headache questionnaire, Floyd's medical condition does not preclude her from performing work. Thus,

---

[4] Cafergot is used to treat migraine headaches. *See* http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a601048.html.

[5] In addition, the ALJ found that, in February 2004, Floyd's gynecologist noted that Floyd denied suffering from chronic headaches and migraines. (R. 26.)

the ALJ pointed to the relevant information in Dr. Chan's questionnaire, including the neurologist's findings that Floyd's headaches stop when she takes medication, to support his conclusion that Floyd's medical condition is not disabling.

To the extent Floyd asserts that the headache questionnaire establishes that her headaches are disabling, her contention is a mischaracterization of Dr. Chan's medical opinion. In the April 12, 2004, headache questionnaire, Dr. Chan indicated that Floyd suffers from throbbing headaches with blurred vision and nausea two to three times per week. (R. 249.) Dr. Chan noted that "[Floyd] took Cafergot which **helped her to stop the migraine headaches**" and that "Neurontin,[6] Nortryptiline[7] and Soma[8] were also prescribed and helped her." (R. 251.) (Emphasis added.) The neurologist also indicated that, "**during times [Floyd] has a headache**, [she] would . . . generally be precluded from performing even basic work activities" and that she would need to take unscheduled breaks at least twice a day for fifteen minutes at a time. (R 251-52.) (Emphasis added.) Dr. Chan concluded that Floyd was capable of performing low stress jobs. (R. 252.)

Dr. Chan's determinations in the headache questionnaire are also consistent with his medical notes and other evidence of Floyd's medical condition. For example, Dr. Chan's

---

[6] Neurontin is primarily used to treat certain types of epileptic seizures and is sometimes prescribed for the treatment of pain syndromes. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Neurontin%AE

[7] Nortryptiline is used to treat depression and chronic nerve pain and to prevent migraine headaches. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Nortriptyline

[8] Soma is a muscle relaxant. *See* http://www.rxlist.com/cgi/pharmclips2.cgi?keyword=%20Soma%AE.

notes indicate that Floyd repeatedly reported that Cafergot helped her headaches. (R. 123-125, 228, 239.) In addition, the results of a magnetic resonance imaging scan and electroencephalogram were normal. (R. 133-34.) The court notes that, during a visit to her gynecologist in February 2004, Floyd denied a history of chronic headaches and migraines. (R. 258.) Floyd's headache log also indicates that she often took over-the-counter medication, such as Tylenol and Aleve, to treat her headache pain. (R. 100-07, 110-11.) Thus, it is clear that the ALJ considered the headache questionnaire in conjunction with Dr. Chan's treatment notes and other medical records to conclude that Floyd's medical condition does not preclude her from performing work.

Although Dr. James N. Anderson and the vocational expert referred to Dr. Chan's headache questionnaire when determining that certain circumstances would prevent Floyd from performing work, it is clear that their opinions were based on Dr. Chan's finding that Floyd would be precluded from performing basic work activities during the times she suffers from migraine headaches. These experts did not discuss Dr. Chan's treatment notes, specific references in the headache questionnaire, or other medical evidence demonstrating that Floyd's headaches were prevented or stopped when she took prescribed or over-the-counter medication.

In light of the medical records, including Dr. Chan's evaluation notes and headache questionnaire, the court concludes that the ALJ's determination that Floyd's headache condition does not prevent her from performing her past relevant work is supported by substantial evidence. Consequently, Floyd is entitled to no relief.


notes indicate that Floyd repeatedly reported that Cafergot helped her headaches. (R. 123-125, 228, 239.) In addition, the results of a magnetic resonance imaging scan and electroencephalogram were normal. (R. 133-34.) The court notes that, during a visit to her gynecologist in February 2004, Floyd denied a history of chronic headaches and migraines. (R. 258.) Floyd's headache log also indicates that she often took over-the-counter medication, such as Tylenol and Aleve, to treat her headache pain. (R. 100-07, 110-11.) Thus, it is clear that the ALJ considered the headache questionnaire in conjunction with Dr. Chan's treatment notes and other medical records to conclude that Floyd's medical condition does not preclude her from performing work.

Although Dr. James N. Anderson and the vocational expert referred to Dr. Chan's headache questionnaire when determining that certain circumstances would prevent Floyd from performing work, it is clear that their opinions were based on Dr. Chan's finding that Floyd would be precluded from performing basic work activities during the times she suffers from migraine headaches. These experts did not discuss Dr. Chan's treatment notes, specific references in the headache questionnaire, or other medical evidence demonstrating that Floyd's headaches were prevented or stopped when she took prescribed or over-the-counter medication.

In light of the medical records, including Dr. Chan's evaluation notes and headache questionnaire, the court concludes that the ALJ's determination that Floyd's headache condition does not prevent her from performing her past relevant work is supported by substantial evidence. Consequently, Floyd is entitled to no relief.

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. The court will enter a separate final judgment affirming the decision of the Commissioner.

Done this 9th day of December, 2005.

       /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE